UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Krucial Staffing, LLC<br>　　　　　　　　Plaintiff,<br><br>vs.<br><br>Federal Insurance Company,<br><br>　and<br><br>National Liability & Fire Insurance Company,<br>　　　　　　　　Defendants. | Civil Action No.  1:20-cv-08202<br><br>**FIRST AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Krucial Staffing, LLC ("Krucial" or "Plaintiff"), by and through its undersigned counsel, and for its First Amended Complaint against Federal Insurance Company ("Federal" or sometimes referred to as parent company "Chubb") and National Liability & Fire Insurance Company ("NLF" or sometimes referred to as parent company "biBERK") (collectively, the "Defendants" or "Insurers"), hereby states and alleges as follows:

## NATURE OF THE ACTION

1. This is an insurance coverage action for declaratory judgment, breach of contract, bad faith, and fraudulent misrepresentation. Krucial brings this action against Federal and NLF because they have each wrongfully and in bad faith breached their contractual obligations to provide a defense to Krucial in the case *Alexis Allen, et al. v. Krucial Staffing, LLC, et al.*, Case No. 20-cv-2859, filed in this Southern District of New York (the "Underlying Suit").

## PARTIES, JURISDICTION, AND VENUE

2. Krucial is a limited liability company organized and existing under the laws of Kansas, with its members domiciled in Kansas, Missouri, Nevada, and South Dakota, and it is therefore a citizen of each of those states.

3. NLF is a foreign insurance company organized and existing under the laws of Connecticut, with its principal place of business in Nebraska, and it is therefore a citizen of Connecticut and Nebraska. NLF is a licensed to conduct insurance business in New York.

4. Federal is a foreign insurance company organized and existing under the laws of Indiana, with its principal place of business in Pennsylvania, and it is therefore a citizen of Indiana and Pennsylvania. Federal is a licensed to conduct insurance business in New York

5. The Insurers are subject to personal jurisdiction in this District, and subject to the Court's specific and general jurisdiction, pursuant to due process, on the grounds that they consent to the Court's jurisdiction, regularly conduct or solicit business in the state of New York, engage in other persistent courses of conduct in the state of New York, and/or derive substantial revenue from the sale of goods and services to persons or entities in the state of New York.

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. 1332(a)(1) because Krucial and the Insurers are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interests and costs.

7. This Court has personal jurisdiction over each of the Insurers pursuant to CPLR § 302(a)(1) and (2) because the Insurers conducted and continue to conduct a significant amount of business within the state of New York, contract to supply services in the state of New York, and/or in person or through its agents, committed tortious acts within the state of New York that has caused injury to Krucial within New York.

8. Venue is proper in this Court because a substantial portion of the events or omissions giving rise to this action occurred in this County.

9. A justiciable controversy exists between the Parties, and as such this Court has authority under 28 U.S.C. §§ 2201 and 2202 to issue a declaratory judgment as to the Parties' respective rights and legal relations.

**FACTS**

**A.    The Underlying Suit.**

10. Krucial is a crisis-management staffing company that provides temporary healthcare workers to hospitals and medical facilities during emergencies to assist with disaster relief and recovery.

11. In early 2020, Krucial deployed a number of healthcare workers to New York City to assist certain hospitals with their surge of COVID-19 patients.

12. On April 6, 2020, Alexis Allen, along with two other healthcare workers that had previously accepted one of Krucial's New York City staffing assignments, filed the Underlying Suit against Krucial and its CEO, Brian Michael Cleary, seeking damages for, among other things, alleged torts and employment violations in connection with those assignments. The Complaint was amended on April 15, 2020 and again on October 9, 2020 to include additional plaintiffs and causes of action.

13. Despite the fact that Krucial purchased insurance coverage to protect itself and its directors, officers, and employees against exactly the type of liabilities asserted in the Underlying Suit, the Insurers have wrongfully refused to acknowledge their defense obligations, improperly refused to indemnify Krucial for defenses costs, and/or unreasonably withheld consent to Krucial's choice of counsel in defending the Underlying Suit. Krucial has filed this action seeking damages for breach of contract, breach of the duty of good faith and fair dealing, fraudulent

misrepresentation, and for a determination of the Insurers' rights, duties, and obligations under their respective insurance policies in connection with the Underlying Suit.

**B.    Specific allegations as to NLF.**

14.    Krucial tendered the matter to NLF on April 1, 2020 (before it was even filed) under NLF's Worker's Compensation/Employers Liability Insurance Policy, Policy No. N9WC095712, effective from June 1, 2019 to June 1, 2020 (the "NLF Policy").  A copy of the NLF Policy is attached hereto as **Exhibit 1.**

15.    Krucial again tendered the Underlying Suit on May 21, 2020 to NLF claims-handler Stephen Sulcoski.  See May 21, 2020 Email from Alexander Brown to Stephen.Sulcoski@biberk.com ("Hi Stephen: The above-referenced claim was tendered to biberk on 4/1/2020.  I am attaching a copy of the operative amended complaint…. Can you please let me know when biberk will be issuing a coverage position on this lawsuit?").

16.    Hearing no response from NLF, Krucial again tendered the Underlying Suit for defense on May 26, 2020.  See May 26, 2020 Email from Alexander Brown to claims@biberk.com ("Please acknowledge my correspondence and that you will be providing a coverage opinion for this claim.  Thank you.")

17.    Hearing no response from NLF, Krucial again tendered the Underlying Suit on October 13, 2020.  See October 13, 2020 Email from Alexander Brown to Stephen.Sulcoski@biberk.com, customerservice@biberk.com, and claims@biberk.com ("Hello: We have tendered this lawsuit multiple times to biberk in multiple ways, but we have yet to receive a coverage position.  To avoid coverage litigation, please confirm you will be providing a coverage opinion immediately.  I am attaching an updated complaint filed this week.").

18. Hearing no response from NLF, Krucial again tendered the Underlying Suit via email on October 21, 2020, and also had the broker Lockton tender the lawsuit directly to NLF, and also tendered the lawsuit through NLF's self-reporting interface for worker's compensation claims.

19. Krucial received no response or even acknowledgement of the tender until November 25, 2020, when NLF filed a declaratory judgment lawsuit in the Federal District of Kansas and simultaneously issued a denial letter dated November 25, 2020. A copy of the November 25, 2020 denial letter ("NLF's Denial Letter") is attached hereto as **Exhibit 2.**

20. NLF's failure to acknowledge the tender of coverage for more than 7 months is bad faith as a matter of law.

21. Incredibly, NLF now says that its Employers Liability Insurance ("ELI") coverage—which is offered by NLF and procured by employers (such as Krucial) for the nearly singular purpose of protecting employers against bodily injury claims brought by their employees—does not actually apply to bodily injury claims brought by employees against their employers. See NLF's Denial Letter, p.5. ("In the case at hand, even if a plaintiff demonstrated that he or she sustained a bodily injury, the policy does not provide coverage for direct suits by an employee against the employer."). This is a perverse reading of the Policy and constitutes bad faith as a matter of law.

22. Alternatively, if the Court finds that NLF's reading of the Policy as is true and not perverse, then NLF is liable for fraudulent misrepresentation as the ELI coverage was marketed by NLF and procured by Krucial to provide coverage for claims by injured employees against Krucial. In fact, here is a screenshot from NLF's own website clearly advertising its ELI coverage as providing protection to the employer for lawsuits if an employee should sue for bodily injury:



See https://www.biberk.com/small-business-insurance/workers-compensation-coverage.

   C.  **Specific allegations as to Federal.**

   23.   In consideration of substantial premiums paid by Krucial, Federal issued Krucial Portfolio Policy No. 8259-6953, effective from June 1, 2019 to June 1, 2020 (the "Federal Policy"). The Federal Policy is attached hereto as **Exhibit 3**.

   24.   The Federal contains several "coverage parts" with separate limits, including a "Directors & Officers and Entity Liability Coverage Part" ("D&O") and an Employers Practices Liability Coverage Part ("EPLI").

   25.   Generally speaking, the D&O and EPLI coverage parts generally obligate Federal to pay "**Loss**" on account of a D&O or EPLI claim first made against an insured during the policy period.

   26.   The term **Loss** means "the amount which an **Insured** becomes legally obligated to pay as a result of any **Claim**," including **Defense Costs.**

27. The term **Defense Costs** means "means that part of Loss consisting of reasonable costs, charges, fees (including attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries, fees or benefits of Insured Persons) incurred in investigating, defending, opposing or appealing any Claim and the premium for appeal, attachment or similar bonds."

28. Krucial tendered the Underlying Suit to Federal in early April 2020. Thereafter, Krucial timely apprised Federal of amended complaints and other significant events in the litigation.

29. On April 14, 2020, Federal issued a reservation of rights to Krucial concerning defense of the Underlying Suit, stating as follows:

> Please be advised that Chubb's investigation of this matter is ongoing. Chubb therefore must reserve all rights, remedies, and defenses under the Policy, at law, and in equity. Nothing contained herein, and no action on our part in investigating these matters, should be construed as an admission of coverage or as a waiver of any right, remedy, or defense that may be available to Chubb.

Federal also inquired at that time whether Krucial had retained counsel.

30. On April 20, 2020, Krucial informed Federal that it had retained Lathrop GPM to defend Krucial in the Underlying Suit.

31. On May 4, 2020, Lathrop GPM submitted to Federal a detailed case analysis describing the factual allegations in the amended complaint, the key issues, litigation strategy, and action items that needed to be addressed quickly.

32. In response, on May 15, 2020, Federal again purported to reserve rights to disclaim coverage for the Underlying Suit, but at the same time communicated it would not accept Krucial's choice of counsel because "Lathrop GPM is not on [Federal's] panel list of approved law firms."

33. On May 15, 2020, Krucial responded to Federal, in part, as follows:

> [C]hubb received notice of this claim over a month ago, but thus far you have refused to give us any position on coverage or any reservation of rights letter. Instead, you continue to vaguely say that Chubb is reserving "all rights, remedies, and defenses under the Policy, at law, and in equity." We don't even know under which coverage part(s) you are agreeing to defend or what limits you assert apply, much less what "rights, remedies, and defenses" you intend to assert against our client. This is quintessential unfair claims-handling…
>
> In any event, it is black letter law that your purported reservations—and your refusal to give a coverage position—has created a conflict of interest entitling Krucial to independent counsel. You cannot force your panel counsel on Krucial without first promising them a full defense, much less while purporting to reserve rights, much less without informing us of the basis of those reservations. As you know, an "insurer may not reserve the right to disclaim coverage and simultaneously insist upon controlling the defense.
>
> *****
>
> In addition to the conflicts of interest mentioned above, Krucial's defense of the underlying litigation would be severely prejudiced if Krucial were to switch counsel at this point in the litigation. The attached Litigation Update was created by Krucial's defense attorneys, supplements the detailed case analysis that we already provided to you, and details the hundreds of hours already spent on the defense of Krucial against the voluminous 325 paragraph Amended Complaint. Among other things, you will see that defense attorneys have worked diligently over the past several weeks to prepare pleadings and motions which must be filed ***next week…***.

34. On June 1, 2020 (almost 2 months after the Underlying Suit was filed), Federal responded with another reservation of rights letter, this time identifying numerous specific "potential coverage issues" upon which Federal was purportedly reserving the right to disclaim coverage. Despite the reservations, Federal asserted it would not consent to the retention of Lathrop GPM because it was a "non-panel" firm, that Federal would not reimburse any defense costs already incurred by Krucial in the Underlying Suit, and that Federal would not apply Krucial's out-of-pocket defense costs towards the deductible. In this same letter, Federal refused to acknowledge coverage under the D&O Coverage Part and insisted that only the $1 million EPLI limit applies to the Underlying Suit.

35. Thereafter, Krucial instituted this lawsuit. It was only after Krucial was forced to initiate this lawsuit that Federal finally conceded (in a letter dated December 5, 2020) that they owed defense obligations under the D&O Coverage Part of the Federal Policy and that at least $2 million in limits (not $1 million as Federal originally asserted) applied.

36. It took Federal nine (9) months from the time the lawsuit was tendered—and the filing of this lawsuit—for Federal to acknowledge their coverage obligations under their D&O Coverage Part.

37. Federal still refuses to pay Krucial and Cleary's defense costs even though Federal has asserted numerous "reservations of rights" upon which they purport to deny coverage and even though Federal originally declined D&O coverage and then took over nine (9) months to acknowledge D&O Coverage.

38. Federal's refusal to pay Krucial's defense costs is based solely on Federal's argument that Lathrop GPM is not Federal's "panel counsel." But nowhere does the Federal Policy obligate Krucial to retain Federal's "panel counsel," particularly where (as here) Federal has reserved rights to disclaim coverage. Instead, the Federal Policy broadly obligates Federal to pay "reasonable costs, charges, fees (including attorney's fees and experts' fees)," and further states that any consent needed by Federal to incur defense costs "shall not be unreasonably withheld."

39. In light of this language, its actions, and the law, Federal's refusal to pay Krucial and Cleary's defense costs is unreasonable and amounts to a breach of contract.

40. The actions and positions taken by Federal are in breach of contract and constitute bad faith misconduct, have wrongfully deprived Krucial of the benefits of the Federal Policy, and have otherwise materially damaged Krucial.

### FIRST CAUSE OF ACTION
### FOR BREACH OF CONTRACT
### (AGAINST BOTH INSURERS)

41. Krucial realleges and incorporates by reference all previous allegations as though set forth fully herein.

42. Krucial has incurred and paid sums, including defense costs, in connection with the Underlying Suit that falls within the coverage and limits afforded under the Policies issued to Krucial by the Insurers.

43. Krucial paid the Insurers all required premiums in consideration for the coverage provided by the Policies and has complied with all obligations and conditions precedent in the Policies.

44. As part of their contractual duties under the Policies, the Insurers are obligated pay reasonable defense costs to Krucial for all covered claims, including defense costs incurred in defending the Underlying Suit, and cannot unreasonably withhold consent for such costs.

45. The Insurers have materially breached their duties and obligations under the Policies by refusing to pay reasonable defense costs Krucial incurred in connection with the Underlying Suit.

46. As a direct and proximate result of these breaches, as alleged above, Krucial has suffered and continues to suffer damages in an amount to conform to proof at trial, but in excess of that required for this Court's jurisdiction.

### SECOND CAUSE OF ACTION
### FOR DECLARATORY JUDGMENT
### (AGAINST BOTH INSURERS)

47. Krucial realleges and incorporates by reference all previous allegations as though set forth fully herein.

48. A justiciable controversy exists between Krucial and the Insurers regarding the Insurers' rights, duties, and obligations to pay all sums incurred and paid by Krucial in connection with the Underlying Suit that fall within the coverage and limits afforded under the Policies.

49. Krucial thus seeks a judicial declaration by this Court of the Insurers' obligations under the Policies to pay Krucial and Cleary's defense costs incurred in connection with the Underlying Suit.

### THIRD CAUSE OF ACTION
### FOR BREACH OF THE IMPLIED COVENANT
### OF GOOD FAITH AND FAIR DEALING
### (AGAINST BOTH INSURERS)

50. Krucial realleges and incorporates by reference all previous allegations as though set forth fully herein.

51. In every insurance policy there is an implied covenant of good faith and fair dealing that the insurance company will not do anything to injure the right of its insured to receive the benefits of the policy. To fulfill its implied covenant of good faith and fair dealing, and insurance company must give at least as much consideration to the interests of its insured as it gives to its own interests.

52. In breach of the implied covenant of good faith and fair dealing arising out of the Policies, the Insurers committed the acts and omissions alleged above, including but not limited to: (1) unreasonably, recklessly, or intentionally refusing to cover Krucial's defense costs when the Insurers knew or should have known that they had an obligation to cover these costs; (2) failing and refusing to pay benefits due and owing to Krucial under the Policies; (3) misrepresenting to Krucial the terms of the Policies; and (4) failing to conduct a fair, reasonable, complete, and timely investigation of Krucial's claim.

53.     The Insurers committed these acts and omissions for the purpose of withholding from Krucial the benefits to which it is entitled under the Policies.  The Insurers acted in gross disregard of Krucial's interests, and deliberately or recklessly failed to consider Krucial's interests at least to the same extent as they did their own interests.

54.     The Insurers' acts and omissions are inconsistent with the reasonable expectations of their insured, are contrary to established practices and legal requirements, are contrary to the express terms of the Policies and the law, are unreasonable and without proper cause, and constitute bad faith.

55.     The damages sustained by Krucial as a result of the Insurers' wrongful conduct were within the contemplation of the Parties as the natural and probably result of a breach of the Insurers' duties at the time of or prior to the Insurers issuing the Policies to Krucial.

56.     The wrongful and egregious conduct of the Insurers as alleged was independently tortious, was directed at Krucial, and on information and belief, was part of a pattern directed at the public generally, was done with conscious disregard to Krucial's rights, and with the intent to injury Krucial.  The Insurers conduct constitutes oppression, fraud, and/or malice, entitling Krucial to punitive damages in an amount appropriate to punish the Insurers.

### FOURTH CAUSE OF ACTION
### FOR FRAUDULENT MISREPRESENTATION
### (AGAINST NLF)

57.     Krucial realleges and incorporates by reference all previous allegations as though set forth fully herein.

58.     The elements of fraudulent misrepresentation include (1) an untrue statement of fact, (2) known to be untrue by the party making it, (3) made with the intent to deceive or recklessly

made with disregard for the truth, where (4) another party justifiably relies on the statement, and (5) acts to his or her injury and damage.

59. Here, NLF expressly makes representations to its customers (including Krucial) that its Employers Liability policies protect employers from bodily injury lawsuits brought by employees.

60. According to NLF's denial of coverage, these representations were false as they now say their Employers Liability policies do not actually provide "coverage for claims by injured employees themselves."

61. NLF's representations were made with the intent to deceive or with reckless disregard for the truth to induce customers, like Krucial, into procuring NLF's Employers Liability policies to protect against bodily injury lawsuits brought by employees.

62. Krucial justifiably relied on NLF's statements and paid NLF substantial premium to insure Krucial against bodily injury and lawsuits brought by its employees.

63. Now, only after Krucial has been sued by its employees for bodily injuries, does NLF contend its Policies do not actually provide "coverage for claims by injured employees themselves."

64. Had Krucial known that NLF's Employer Liability policies did not actually provide coverage for lawsuits by employees against their employers (which is the principal if not exclusive reason why employer liability policies are purchased), then Krucial would not have bought the coverage through NLF and would have secured coverage with a different insurer.

65. As a direct result of the false and fraudulent statements described above, NLF has deprived Krucial of the benefit of insurance coverage and caused Krucial injury and damage, including consequential, special, and incidental damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Krucial Staffing, LLC respectfully prays for a judgment against Defendants Federal Insurance Company and National Liability & Fire Insurance Company for the following:

(a) Declaratory relief;

(b) Compensatory and general damages;

(c) Consequential, special, and incidental damages;

(d) Applicable interest, including prejudgment interest at the maximum legal rate;

(e) Punitive damages;

(f) Reasonable attorneys' fees and costs; and

(g) Such other and further relief as the Court may deem just and proper.

Dated: February 15, 2021

LATHROP GPM LLP

By:  /s/ *Joshua J. Pollack*

Joshua J. Pollack (JP9095)
2049 Century Park East, Suite 3500S
Los Angeles, CA 90067
Telephone:  310.789.4662
Telecopier:  310.789.4601
joshua.pollack@lathropgpm.com

Alexander Brown (*pro hac vice pending*)
Noah H. Nash (*pro hac vice pending*)
2345 Grand Boulevard, Suite 2200
Kansas City, MO 64108
Telephone:  816.460.5629
Telecopier:  816.292.2001
alexander.brown@lathropgpm.com
noah.nash@lathropgpm.com

*Attorneys for Plaintiff*
*Krucial Staffing, LLC*

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiff Krucial Staffing, LLC, demands trial by jury in this action of all issues so triable.

Dated: February 15, 2021                LATHROP GPM LLP

By:   /s/ *Joshua J. Pollack*

        Joshua J. Pollack (JP9095)
        2049 Century Park East, Suite 3500S
        Los Angeles, CA 90067
        Telephone:  310.789.4662
        Telecopier:  310.789.4601
        joshua.pollack@lathropgpm.com

        Alexander Brown (*pro hac vice pending*)
        Noah H. Nash (*pro hac vice pending*)
        2345 Grand Boulevard, Suite 2200
        Kansas City, MO 64108
        Telephone:  816.460.5629
        Telecopier:  816.292.2001
        alexander.brown@lathropgpm.com
        noah.nash@lathropgpm.com